**NEW YORK LIFE INSURANCE COMPANY, Appellant**

v.

**George Anna WELCH, Appellee.**

**No. 16452.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 31, 1961.

Decided Dec. 14, 1961.

Mr. Llewellyn C. Thomas, Washington, D. C., with whom Messrs. G. B. Craighill, Caesar L. Aiello and Oliver Gasch, Washington, D. C., were on the brief, for appellant.

Mr. Bruce R. Harrison, Washington, D. C., with whom Mr. Thomas P. Bomar, Washington, D. C., was on the brief, for appellee.

Before Mr. Justice REED, retired,* WILBUR K. MILLER, Chief Judge, and BAZELON, Circuit Judge.

* Sitting by designation pursuant to Sec. 294(a), Title 28, U.S.Code.

WILBUR K. MILLER, Chief Judge.

Mrs. George Anna Welch was the beneficiary designated in a policy on the life of her brother, Granver P. Thomaso, issued by the New York Life Insurance Company. Thomaso committed suicide in Galveston, Texas, August 12, 1960. Mrs. Welch sent proofs of death to the Company August 15, 1960, and claimed payment in full, but it declined to pay because of potential adverse claims. On October 5, 1960, Mrs. Welch sued on the policy. New York Life answered, admitting liability for $10,020.70, the net value of the policy, but filed a counterclaim and cross-claim, pursuant to Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C., invoking the interpleader provisions and procedure of 28 U.S.C. §§ 1335 and 2361, asking that certain potential claimants (hereinafter enumerated) be made parties, that process be issued against them, and that they and Mrs. Welch be required to interplead. It prayed that the claimants be enjoined from asserting their claims anywhere except in this action, and offered to pay the net value of the policy into the registry of the court. Soon thereafter the Company made the deposit pursuant to an agreed order. New York Life formally moved for the relief sought in its counterclaim and cross-claim, but Mrs. Welch denied that interpleader was required and moved for summary judgment.

On March 20, 1961, the District Court denied New York Life's motion for relief by way of interpleader, and granted summary judgment to Mrs. Welch for the net value of the policy. New York Life appeals.[1]

In its counterclaim and cross-claim New York Life alleged it received the following letter from Leon M. Banks, Sr., of Galveston, Texas, on August 25, 1960:

"I am registering a claim for $50.00 (Fifty and no/100 Dollars) against the policy proceeds that are to be paid the beneficiary of the above named deceased [Granver P. Thomaso]. I claim payment under the facility of payment clause in the insurance contract.

"It was the last wish of the deceased that all of his bills be paid and the food bill that he had incurred with me was included in the number of bills that he had listed to be paid. He sent the request to his sister who is the beneficiary and to his brother who is the contingent beneficiary. However, it seems to me that neither the one or the other intend to do what is right by the creditors of their deceased brother, who wished to keep his record clean even after death by the payments from the only source in the world that makes this possible * * * proceeds from a Life Insurance policy.

"Enclosed is a photostatic copy of the last letter he wrote informing his relatives what to do after he had passed this life. He wrote the original letter in longhand and made copies to go to the persons listed on the paper with this same typewriter. After remembering that he had used the typewriter for such a long time we dumped the waste basket and found the pieces of his letter we then fitted the pieces together and read the letter.

"Please consider my letter a filing of a formal claim for $50.00."

Enclosed with the foregoing letter, averred New York Life, was a photostatic copy of the insured's letter referred to by Banks. It was dated August 11, 1960, ad-

1. After the notice of appeal was filed, the District Court entered an order, which was consented to by the parties, directing the Clerk to pay out of the registry of the court the sum of $6,000 to Mrs. Welch, and to retain the sum of $4,020.-70 "pending final disposition of the appeal and until further order of this Court," and directing Mrs. Welch to pay the claim of Leon M. Banks for $50.00, and the claim of W. K. Hebert & Co. for $455.25, which are described later in this opinion.

dressed to Mrs. Welch and five other relatives, and was in pertinent part as follows:

"Today, Thursday, according to the Horoscope is supposed to be my lucky day. Therefore, I take this opportunity to write you to make several requests of you individually and collectively to set my affairs which I am leaving in an unfinished state, straight with the people listed below. Be mindful of the fact that these are not awards but unsettled debts for considerations I have received from these persons and organizations, please if at all possible see that each person receives what I list as due him.

"Of course the question arises as to how I expect you to pay these people? I have a small insurance policy with the New York Life Insurance Company, the premium for this month is past due, the same I am forwarding to Wallace, by mail, tonight because I feel that he will divide equally what is left with George Anna who has already done away with her inheritance.

\* \* \* \* \* \*

"Debt Owed

| | | |
|---|---|---|
| Mr. Kinnon Amuny | $ 50.00 | Pt. Arthur, Texas |
| 'Illegible' | 700.00 | P. O. Box 231 |
| | | Pt. Arthur, Texas |
| Mr. and Mrs. | | 215-E-3rd St. |
| Phillip James | 850.00 | Pt. Arthur, Texas |
| First Hutchin Sealy | | Galveston, Texas |
| National Bank | 314.00 | |
| Mr. Alphonse LaPointe | 500.00 | 201-E-47th Place |
| | | Los Angeles, Calif. |
| Mr. Clarence Gardner | 100.00 | Palm Terrace |
| | | Galveston, Texas |
| Mr. Walter Home | 30.00 | 412-27th St. |
| | | Galveston, Texas |
| Mr. Leon M. Banks | 50.00 | 1219-26th St. |
| | | Galveston, Texas |
| Mrs. Rosa Niles | 40.00 | 1324 26th St. |
| | | Galveston, Texas |
| Port Arthur | | Pt. Arthur, Texas |
| Credit Bureau | 73.00 | |
| Total | $3,107.00" | |

\* \* \* \* \* \*

New York Life stated the photostat showed that the suicide letter was unsigned and had been torn in several places.

New York Life alleged it received on or about September 26, 1960, the following letter from Nando J. Hebert, the funeral director who conducted the services for the insured:

"I hand you herein a photostatic copy of the funeral bill of the above mentioned insured. You will please note that funeral bill has been signed by the beneficiary in the above mentioned policy of insurance, and carries an unpaid or unsecured balance.

"The insured sent the policy to a brother Mr. W. K. Thomas of Los Angeles, California, to collect. The beneficiary, Mrs. George Ann [sic] Welch, of Washington, D. C., came down and completed arrangements for the memorial services, without

the name of the company, or the number of the policy of insurance, and of course I was unable to get an assignment on that account.

"I am anxious to know if it is possible for the insurance company to pay this balance under the Facility of Payment Clause?"

Enclosed with Hebert's letter was a photostatic copy of the funeral bill showing a balance due of $455.25 and bearing what purported to be an "O.K." signed "Mrs. George Anna Welch (Sister)."

On or about September 6, 1960, Pearlie M. Thomas was appointed by a county court in Oklahoma as administratrix of the estate of Granver B. Thomas, alleged to have been the insured in the policy here involved.

New York Life asked Mrs. Welch whether she intended to pay the debts listed in the alleged suicide letter. She declined to say what she intended to do, and demanded the full proceeds of the policy. New York Life alleged that the possible claimants to portions of the policy's proceeds are residents of different states, and stated that, because of the potential adverse claims, it

"* * * is in doubt whether plaintiff is entitled to the full amount due under said policy and whether the other claimants are entitled to a part thereof, and cannot safely pay the proceeds to any of said claimants without obtaining the aid of this Court by requiring all such claimants to appear in this Civil Action and interplead."

It therefore prayed for interpleader.

Jurisdiction of any civil action of interpleader is given to the district courts by 28 U.S.C. § 1335, if (1) two or more adverse claimants of diverse citizenship "are claiming or may claim to be entitled to" the money or property involved, and if (2) the stakeholder has deposited the money or property into the registry of the court, "there to abide the judgment of the court."

Against the apparent applicability of the interpleader statute, Mrs. Welch contends it does not appear that "the insured ever consummated his purported desire to satisfy his creditors," or that he "ever actually delivered the policy to insured's brother effectuating an assignment for the benefit of creditors." She points out that she has received only one claim which could be considered to be "adverse;" a claim which she has been directed to pay.

■ The interpleader statute is liberally construed to protect the stakeholder from the expense of defending twice, as well as to protect him from double liability. Metropolitan Life Ins. Co. v. Segaritis, 20 F.Supp. 739 (E.D.Pa. 1937). A stakeholder, acting in good faith, may maintain a suit in interpleader to avoid the vexation and expense of resisting adverse claims, even though he believes only one of them is meritorious. Hunter v. Federal Life Ins. Co., 111 F.2d 551, 556 (8th Cir., 1940).

■ Whether the insured ever sent to the addressees copies of the letter found in a wastebasket or sent the policy to his brother in California as escrow agent for his creditors and, if he did, whether those acts amounted to a *pro tanto* change of beneficiary or an assignment for the benefit of creditors, are respectively questions of fact and law to be determined in the interpleader proceeding between Mrs. Welch and the alleged creditors. We hold that, in such circumstances, it was error to refuse to permit interpleader and to grant summary judgment to Mrs. Welch.

Reversed.