**In the Matter of CONTINENTAL ILLINOIS SECURITIES LITIGATION.**

No. 92–4088.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 22, 1992.

Decided Jan. 21, 1993.

Lowell E. Sachnoff, Jeffrey A. Schumacher, Gary S. Caplan, Sachnoff & Weaver, Chicago, IL, for petitioners.

Fred Foreman, U.S. Atty., Crim. Div., Chicago, IL, for respondents.

Before POSNER, RIPPLE, and MANION, Circuit Judges.

POSNER, Circuit Judge.

On May 15, 1989, having settled this class action for $45 million, the lawyers for the class submitted their petition for fees and expenses to Judge Grady. The total amount requested was $9 million. After considering the petition for more than a year, the judge awarded approximately one half the amount requested. The lawyers appealed, and in April 1992 we reversed, finding a number of errors in the judge's fee order. *In re Continental Illinois Securities Litigation,* 962 F.2d 566 (7th Cir. 1992). In recognition of the considerable time that the judge had already spent on the matter, we suggested that he compare the contingent-fee percentage sought by the class lawyers, 20 percent, with contingent fees set by arms-length contracts between lawyers and their clients in comparable commercial litigation. *Id.* at 572–73. These contracts would provide a market estimate of the value of the class lawyers' service to the class, in accordance with the principle that a judge in setting a fee award should be trying to give the lawyers what they would have got in a voluntary transaction in the market for legal services.

Taking up this suggestion, the lawyers for the class submitted to the district judge a mass of affidavits concerning contingent fees charged in comparable multimillion dollar commercial suits in which, however, unlike the situation here, there was a negotiated fee between lawyer and client. These affidavits appear to establish that the 20 percent fee that the lawyers for the class are seeking in this case is at the low end of the range found in the market. Without commenting on this evidence the judge on December 1, 1992, more than eight months after our decision, issued a brief order in which he said that he would base the fee award on "the 'sampling' technique approved in *Evans v. City of Evanston,* 941 F.2d 473, 476–477 (7th Cir.1991), and recommended by the Court of Appeals as a possibility in this case." We had said in *Evans* and repeated in our decision in the present case that rather than scrutinize all the time sheets kept by the lawyers— time sheets that in the present case cover more than 40,000 hours—in order to determine whether the lawyers had put in an excessive amount of time on the case, the judge could take a sample of the time sheets and extrapolate from the sample to the total population, that is, the total number of hours.

The order of December 1 precipitated this petition for mandamus. The petition

points out that Judge Grady had reviewed all the time sheets before he made his first fee order, that even if he again disallows the time for research and conferences that we said he should not have disallowed without giving reasons it is most unlikely that he could justify an award of less than $9 million, and that it will soon be four years since the fee application with no end of the fee proceedings in sight. The petition points to passages in the transcript of the hearing on remand before the judge in which he appears to express antipathy to large awards of attorneys' fees. The petition asks us to direct the judge not to undertake, as his order of December 1 suggests he intends to, a review of the fee application from the ground up—a process that could well take another year and be followed by another appeal, even though no member of the class objects to the $9 million award sought by the lawyers.

■ One of the less controversial functions of mandamus is to assure that a lower court complies with the spirit as well as the letter of the mandate issued to that court by a higher court. *Will v. United States,* 389 U.S. 90, 95–96, 88 S.Ct. 269, 273–274, 19 L.Ed.2d 305 (1967); *Oswald v. McGarr,* 620 F.2d 1190, 1195–96 (7th Cir. 1980); *Yablonski v. United Mine Workers,* 454 F.2d 1036, 1038 (D.C.Cir.1971). Although we have no reason to suppose that Judge Grady is acting otherwise than in the utmost good faith in seeking to carry out our mandate in this case, we do not think that the order of December 1 can reasonably be thought to comply with our mandate. Our opinion did mention the possibility of sampling time sheets in order to economize on a district judge's time when he is faced with a fee application that covers many thousands of hours of lawyer and paralegal time, but in context it should have been apparent that we were not suggesting that that procedure be followed on remand in a case in which the district judge *had already reviewed all the time sheets.* The only error the judge had made that related to the number of hours submitted by the lawyers was in arbitrarily reducing the hours for research and conferences. The correction of that error would require at most a sampling of *those* hours, and yet the order of December 1 implies that the judge means to recompute the fee award from the ground up on the basis of an unspecified method of sampling from the total number of hours—42,000—listed in the time sheets.

The only suggestion that we made for disposing of *this* fee case was that the judge consider the market experience with litigation of this kind. The lawyers accordingly submitted affidavits summarizing and documenting that experience. Judge Grady failed even to mention this evidence, let alone offer any ground for rejecting it in favor of restarting the fee inquiry, almost four years after it began, from scratch.

Judicial mandates must be obeyed, and litigation must have an end. In order to assure compliance with our mandate and a speedy end to this satellite litigation over attorneys' fees we vacate the judge's order of December 1 and direct him to issue within 30 days of today an order setting forth a procedure and timetable for resolving this matter by the entry of a final fee award within 120 days of today.

So Ordered.